**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SHARON CHENG, CRISTINA DIAS, RHONDA SANFILIPO, BRUCE PULEO, ZINA PRUITT, RON ZIMMERMAN, CHERYL SILVERSTEIN, TINA FENG, ROBERT HAKIM, BERNADETTE GRIMES, ELIZABETH GENDRON, ROGER CARTER, MARLENE RUDOLPH, PATRICIA BARLOW, TERESA EDWARDS, ISAAC TORDJMAN, JAMES HETTINGER, DIEU LE, CHRIS BOHN, DANIEL DEWEERDT, CRAIG BOXER, BETTY DENDY, ELIZABETH PERSAK, KRISTI ROCK, JENNIFER CHALAL, JOHN TORRANCE, LENARD SHOEMAKER, MICHAEL MITCHELL, ROBERT SKELTON, JEFFREY JONES, ISABEL MARQUES, PAYAM RASTEGAR, and SYED ABDUL NAFAY, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>            v.<br><br>TOYOTA MOTOR CORPORATION, TOYOTA MOTOR NORTH AMERICA, INC., and DENSO INTERNATIONAL AMERICA, INC.,<br><br>        Defendants. | Case No: 1:20-cv-00629-WFK-JRC |

# SETTLEMENT AGREEMENT

## TABLE OF CONTENTS

Section                                                                     Page

I.      PROCEDURAL HISTORY ................................................................2

II.     DEFINITIONS ................................................................................8

III.    SETTLEMENT RELIEF ................................................................17

IV.     NOTICE TO THE CLASS ..............................................................25

V.      REQUESTS FOR EXCLUSION .....................................................31

VI.     OBJECTIONS TO SETTLEMENT ................................................32

VII.    RELEASE AND WAIVER ..............................................................35

VIII.   QUALIFIED SETTLEMENT FUND .............................................39

IX.     ATTORNEYS' FEES, COSTS, AND EXPENSES AND CLASS
        REPRESENTATIVE SERVICE AWARDS .....................................40

X.      PRELIMINARY APPROVAL ORDER, FINAL ORDER, FINAL JUDGMENT,
        AND RELATED ORDERS ..............................................................42

XI.     MODIFICATION OR TERMINATION OF THIS SETTLEMENT AGREEMENT
        ....................................................................................................45

XII.    GENERAL MATTERS AND RESERVATIONS...........................48

WORKAMER\03145\145008\39583542.v16-2/3/22

## TABLE OF EXHIBITS

**Document**                                          **Exhibit Number**

List of SSC Vehicles................................................................................1a

List of Additional Vehicles.........................................................................1b

List of Subject Vehicles.............................................................................2

Preliminary Approval Order .........................................................................3

Notice Plan .........................................................................................4

Long Form Notice....................................................................................5

Direct Mail Notice..................................................................................6

Publication Notice..................................................................................7

Claim Form .........................................................................................8

Settlement Notice Administrator's Declaration.......................................................9

Final Judgment......................................................................................10

Final Order ........................................................................................11

**WHEREAS**, Plaintiffs' Second Amended Consolidated Class Action Complaint in the above-referenced Action (all terms defined below) allege that certain Denso fuel pumps in certain Toyota and Lexus vehicles are defective;

**WHEREAS**, Class Counsel have conducted substantial discovery, have investigated the facts and underlying events relating to the subject matter of the Action, have retained an independent automotive engineering consultant to analyze the allege defect and potential solutions, have carefully analyzed the applicable legal principles, and have concluded, based upon their investigation, and taking into account the risks, uncertainties, burdens, and costs of further prosecution of the Action, and taking into account the substantial benefits to be received pursuant to this Settlement Agreement and that a resolution and compromise on the terms set forth herein is fair, reasonable, adequate, and in the best interests of Class Representatives and the other Class Members, and treats Class Members fairly and equitably in relation to one another;

**WHEREAS**, Toyota and Denso, for the purpose of avoiding burden, expense, risk, and uncertainty of continuing to litigate the Action, and for the purpose of putting to rest all controversies with Class Representatives, the other Class members, the Action, and claims that were or could have been alleged, except as otherwise set forth herein, and without any admission of liability or wrongdoing, desires to enter into this Settlement Agreement;

**WHEREAS**, as a result of extensive arm's length negotiations, at times with the assistance of Court-appointed Settlement Special Master Patrick A. Juneau, Class Representatives, Class Counsel, Toyota, and Denso have entered into this Settlement Agreement;

**WHEREAS**, Class Counsel represent and warrant that they are fully authorized to enter into this Settlement Agreement on behalf of Class Representatives, and that Class Counsel have

1

consulted with and confirmed that all proposed Class Representatives fully support and have no objection to this Settlement Agreement; and

**WHEREAS**, it is agreed that this Settlement Agreement shall not be deemed or construed to be an admission, concession, or evidence of any violation of any federal, state, or local statute, regulation, rule, or other law, or principle of common law or equity, or of any liability or wrongdoing whatsoever, by Toyota, Denso, or any of the Released Parties, or of the truth or validity of any of the claims that Class Representatives have asserted;

**NOW, THEREFORE**, without any admission or concession by Class Representatives or Class Counsel of any lack of merit to their allegations and claims, and without any admission or concession by Toyota or Denso of any liability or wrongdoing or lack of merit in its defenses, in consideration of the mutual covenants and terms contained herein, and subject to both the preliminary and final approval by the Court, Class Counsel, Class Representatives, Toyota, and Denso agree as follows:

## I.   <u>PROCEDURAL HISTORY</u>

A.   On February 4, 2020, Plaintiff Sharon Cheng filed a class action complaint in the United States District Court for the Eastern District of New York, *Sharon Cheng, et al. v. Toyota Motor Corporation, et al*., Case No. 1:20-cv-00629-WFK-JRC (E.D.N.Y.), asserting claims related to Toyota's January 13, 2020 recall report (the "Recall Report") to NHTSA voluntarily recalling nearly 700,000 Toyota and Lexus vehicles manufactured between August 1, 2018 through January 31, 2019 with low-pressure Denso fuel pumps (together with the expansions referenced below, the "Recall").  The Recall Report states:

> These fuel pumps contain an impeller that could deform due to excessive fuel absorption. Although the cause is unknown, if impeller deformation occurs, the impeller may interfere with the fuel pump body, and this could result in illumination of check engine and master warning indicators, rough engine running, engine no

2

> start and/or vehicle stall while driving at low speed. However, in rare instances, vehicle stall could occur while driving at higher speeds, increasing the risk of crash.

Plaintiff asserted claims asserts claims on behalf of a statewide class for: (1) violations of New York's consumer protection statute, New York General Business Law § 349; (2) breach of express warranty; (3) breach of implied warranty; (4) negligent recall/undertaking; (5) unjust enrichment; and, on behalf of a nationwide class, (6) a claim for violations of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq*.  Plaintiff also alleged that the Recall was deficient because additional Toyota and Lexus vehicles shared the same fuel pump that gave rise to the Recall.

B.     On March 4 and March 19, 2020, Toyota expanded the Recall to cover more than 1.8 million affected Toyota and Lexus vehicles equipped with Denso Fuel Pumps manufactured between 2013 and 2019.

C.     On April 14, 2020, Plaintiff Cheng filed her first amended complaint adding as plaintiffs Rhonda SanFilipo, Cristina Dias, Zina Pruitt, Marlene Rudolph, Patricia Barlow, and Kristi Rock; adding as defendants Denso Corporation and Denso International America, Inc., the makers of the defective fuel pumps; and allegations relating to Toyota's March 4 and 19, 2020 expansions of the Recall.  The first amended complaint asserts 28 claims against Toyota and 16 claims against Denso, including state law claims for strict liability, which are also asserted against Toyota

D.     Between March 20, 2020 and April 20, 2020, three other putative class actions were filed in other federal courts making substantially similar allegations as those in *Cheng*.  These other cases were: (i) *Tina Feng, et al. v. Toyota Motor North America, Inc., et al.,* No. 20-cv-0534-CAB-BLM (S.D. Cal.) (filed March 20, 2020); (ii) *Jennifer Chalal v. Toyota Motor Corporation, et al.,* No. 2:20-cv-01867-CJD (E.D. Pa.) (filed April 10, 2020); and (iii) *Elizabeth Gendron v. Toyota Motor Corp. et al.,* No. 8:20-cv-775-DOC-KES (C.D. Cal.) (filed April 20, 2020).  These

3

three cases were voluntarily transferred to the United States District Court for the Eastern District of New York. On June 26, 2020, the Court ordered the consolidation of *Feng* and *Chalal* with *Cheng*. On July 31, 2020, the Court ordered the consolidation of *Gendron* with *Cheng*.

E. After the four cases cited above were filed, four other putative class actions were filed making similar allegations. These cases are: (i) *Lenard Shoemaker v. Toyota Motor North America, Inc., et al.*, 3:20-cv-00869-RDM (M.D. Pa.) (filed May 28, 2020); (ii) *Isaac Tordjman v. Toyota Motor North America, Inc., et al.,* 9:20-cv-80871 (S.D. Fla.) (filed May 29, 2020); (iii) *Yang Zuo v. Toyota Motor North America, Inc., et al.*, 2:20-cv-06607 (D.N.J.) (filed May 29, 2020); and (iv) *Isabel Marques, et al. v. Toyota Motor North America, Inc., et al.,* 1:20-cv-00665 (E.D. Va.) (filed June 12, 2020).[1]

F. On June 16, 2020, plaintiffs in these four later-filed cases filed a motion before the Judicial Panel on Multidistrict Litigation ("JPML") to centralize their cases and the consolidated *Cheng*, *Feng*, *Chalal* and *Gendron* cases in the Eastern District of Michigan. *In re Denso-Manufactured Toyota Fuel Pump Marketing, Sales Practices and Products Liability Litigation*, MDL No. 2956 (J.P.M.L.). TMNA, DIAM and plaintiffs in the four early filed cases opposed the motion, which was set to be heard by the Panel on September 24, 2020. On September 15, 2020, the moving plaintiffs withdrew their motion and the JPML's Order Deeming the Motion Withdrawn and Vacating the September 24, 2020 Hearing Session Order was docketed the same day.

G. On April 27 and June 11, 2020, Denso recalled over 2 million of its Fuel Pumps.

---

[1] One additional complaint, *Jose Ruis, et al. v. Toyota Motor North America, Inc. et al.*, 2:20-cv-12600 (D.N.J.), was filed on September 11, 2020, and made similar allegations to the cases above. *Ruis* was dismissed without prejudice on September 23, 2020.

H.      On July 3, 2020, Plaintiffs in the consolidated *Cheng* action filed their consolidated amended class action complaint adding as plaintiffs Bruce Puleo, Eon Zimmerman, Tina Feng, Robert Hakim, Bernadette Grimes, Teresa Edwards, Dieu Le, Chris Bohn, Daniel Deweerdt, Betty Dendy, Jennifer Chalal, John Torrance, and Michael Mitchell. The consolidated amended complaint included refined allegations related to Toyota's expanded Recall, Denso's recall, the Fuel Pump defect and countermeasure.  In addition to the state class claims asserted on behalf of the new plaintiffs, the consolidated amended complaint asserted claims on behalf a nationwide class; a multi-state consumer protection class covering 25 states; another multi-state consumer protection class covering six states; multi-state strict liability class and multi-state negligent recall classes, each covering 22 states.

I.      In September 2020, Plaintiffs in *Shoemaker*, *Zuo*, *Tordjman* and *Marques* filed motions to voluntarily transfer their cases to the Eastern District of New York.  These motions were granted and these cases were transferred into the Eastern District of New York and consolidated with the *Cheng* action on October 8 and 15, 2020.

J.      On October 28, 2020, Toyota expanded its Recall to cover an additional 1.5 million affected Toyota and Lexus vehicles manufactured between 2013 and 2019. The Recall currently encompasses approximately 3.36 million Toyota and Lexus vehicles.

K.      On November 5, 2020, Plaintiffs in *Cheng* filed their first amended consolidated amended class action complaint adding as plaintiffs Robert Skelton, Jeffrey Jones, Isabel Marques, Payam Rastegar, Syed Abdul Nafay, Cheryl Silverstein, Elizabeth Gendron, Roger Carter, Issac Tordjman, James Hettinger, Craig Boxer, Elizabeth Persak, and Lenard Shoemaker. The first amended consolidated complaint included allegations relating to Toyota's most recent expansion of the Recall. In addition to state class claims asserted on behalf of the new plaintiffs, the first

amended consolidated amended complaint asserted claims on behalf a nationwide class, multi-state classes for consumer protection, strict liability class and negligent recall.

L.     On December 14, 2020, Plaintiffs filed their Second Amended Consolidated Complaint, refining their allegations.   The Class Action Complaint is brought by 33 named Plaintiffs on behalf of a nationwide class, multi-state classes for consumer protection, strict liability, and negligent recall, and individual state classes for Alabama, Arizona, California, Florida, Georgia, Illinois, Maryland, Missouri, New York, New Jersey, North Carolina, Ohio, Pennsylvania, Texas, Utah and Virginia, and asserts claims against TMC, TMNA, Denso Corporation, and DIAM.   There were 33 plaintiffs named and 97 causes of action.

M.     On January 15, 2021, TMNA and DIAM served their motions to dismiss.   TMNA and DIAM made numerous arguments. Plaintiffs served their opposition on March 30, 2021, responding to TMNA and DIAM's arguments.   TMNA and DIAM filed their replies on May 28, 2021.

N.     Plaintiffs, TMNA, and DIAM submitted a Discovery Plan, which was approved by the Court on October 28, 2020.   Plaintiffs, TMNA, and DIAM served their written initial disclosures on November 2, 2020.   Plaintiffs served requests for production of documents on TMNA and DIAM on July 2, 2020, and served updated Requests on January 22, 2021.   DIAM served its responses to Plaintiffs' requests on March 15, 2021.   TMNA served its responses to Plaintiffs' requests on April 7, 2021.   On September 9, 2021, TMC served its Initial Disclosures, Responses to Plaintiffs' Requests for Production, and Response to Plaintiffs' Interrogatory.   Also on September 9, 2021, TMNA served its Response to Plaintiffs' Interrogatory with verification. Defendants have produced documents responsive to Plaintiffs' requests.

O.      As a part of formal discovery, Defendants produced, and Plaintiffs processed and reviewed, about 655,000 documents containing approximately 1.5 million pages of documents related to the Recall, the design and operation of the subject fuel pumps, warranty data, failure modes attributed to the subject fuel pumps, the Defendants' investigation into the defect, and the defect countermeasure development and implementation.  Additionally, Plaintiffs' independent automotive engineering expert sourced and inspected over 100 fuel pumps replaced pursuant to the Recall, and has analyzed, *inter alia*, the pumps' operation, specifications, and density of the impeller.

P.      As a part of confirmatory discovery, Defendants have produced a substantial number of additional documents, tangible things, and information requested by Class Counsel related to the design and operation of the original equipment fuel pump; the design, operation, development, implementation, the effectiveness of the countermeasure fuel pump; and the Recalls. Plaintiffs' independent automotive engineering expert reviewed and analyzed this additional material, including assessing the efficacy of the countermeasure, the pre- and post-recall warranty repair rates, and the average time in service for manifestation, among other things. Defendants also provided witnesses for interview on these topics and other matters requested by Class Counsel.

Q.      Denso Corporation, the corporate parent of DIAM located in Japan, was served on May 27, 2021 and dismissed without prejudice from the Action on August 16, 2021.  TMC, TMNA's parent also located in Japan, was served on May 11, 2021.  On August 16, 2021, TMC filed its pre-motion letter to dismiss Plaintiffs' consolidated complaint.  On August 23, 2021, Plaintiffs filed their opposition to TMC's pre-motion letter.

R.      On November 3, 2021, the Parties jointly moved the Court to appoint Patrick A. Juneau as Settlement Special Master.  The Court granted the joint motion and So Ordered the

appointment of Patrick A. Juneau on the same day.  The Parties had numerous communications with the Settlement Special Master regarding the negotiations, terms, timing, and related issues.

     S.     On February 16, 2022, on the Parties' consent, the Action was referred to Magistrate Judge James R. Cho to conduct all proceedings and order the entry of a final judgment pursuant to 28 U.S.C. § 636(c).

     T.     On March 1, 2022, TMNA and DIAM withdrew their pending motions to dismiss without prejudice and with leave to refile.

## II.   <u>DEFINITIONS</u>

     A.     As used in this Settlement Agreement and the attached exhibits (which are an integral part of this Settlement Agreement and are incorporated herein in their entirety by reference), the following terms have the following meanings, unless this Settlement Agreement specifically provides otherwise:

     1.     "Action" means *Cheng, et al. v. Toyota Motor Corporation et al.*, Case No. 1:20-cv-00629-WFK-JRC (E.D.N.Y.) and all cases consolidated therein.

     2.     "Additional Vehicles" means those vehicles that are equipped with Denso low-pressure fuel pumps with part number prefixes 23220- and/or 23221- that are identified in Exhibit 1b.

     3.     "Agreement" or "Settlement Agreement" means this Settlement Agreement and the exhibits attached hereto or incorporated herein, as well as any and all subsequent amendments and any exhibits to such amendments.

     4.     "Attorneys' Fees, Costs, and Expenses" means such funds as may be awarded by the Court to compensate any and all attorneys representing plaintiffs for their fees and expenses in connection with the Action and the Settlement Agreement, as described in Section VIII of this Settlement Agreement.

5.     "Claim" means the claim of a Class Member or his or her or its representative for reimbursement as part of the Out-of-Pocket Claims Process submitted on a Claim Form as provided in this Settlement Agreement.

6.     "Claimant" means a Class Member who has submitted a Claim Form for reimbursement as part of the Out-of-Pocket Claims Process.

7.     "Claim Form" means the document in substantially the same form as Exhibit 8 attached to this Settlement Agreement by which a Claim shall be submitted for reimbursement as part of the Out-of-Pocket Claims Process.

8.     "Claim Submission Period" means the time frame in which Class Members may submit a Claim Form for reimbursement as part of the Out-of-Pocket Claims Process to the Settlement Notice Administrator, which shall run from the Initial Notice Date up to and including ninety (90) days after the Court's issuance of the Final Order and Final Judgment.

9.     "Claims Process" means the process for submitting and reviewing Claims described in Section III.C., below, of this Settlement Agreement.

10.    "Class" or "Class Member(s)" means, for settlement purposes only, all individuals or legal entities who, at any time as of the entry of the Initial Notice Date, own or owned, purchase(d) or lease(d) Covered Vehicles in any of the fifty States, the District of Columbia, Puerto Rico, and all other United States territories and/or possessions.  Excluded from the Class are: (a) Toyota, its officers, directors and employees; its affiliates and affiliates' officers, directors and employees; its distributors and distributors' officers, directors and employees; and Toyota Dealers and Toyota Dealers' officers and directors; (b) Denso, its officers, directors and employees; its affiliates and affiliates' officers, directors and employees; its distributors and distributors' officers, directors and employees; (c) Plaintiffs' Counsel; and (d) judicial officers and

9

their immediate family members and associated court staff assigned to this case.  In addition, persons or entities are not Class Members once they timely and properly exclude themselves from the Class, as provided in this Settlement Agreement, and once the exclusion request is finally approved by the Court.

11.     "Class Action Complaint" means the Second Amended Consolidated Class Action Complaint, ECF Doc. 106, filed in this Court on December 12, 2020.

12.     "Class Counsel" means W. Daniel "Dee" Miles III and Demet Basar of Beasley, Allen, Crow, Methvin, Portis & Miles, P.C.

13.     "Class Notice" means the notice program described in Section IV, below.

14.     "Class Representatives" means Sharon Cheng, Cristina Dias, Rhonda SanFilipo, Bruce Puleo, Zina Pruitt, Ron Zimmerman, Cheryl Silverstein, Tina Feng, Robert Hakim, Bernadette Grimes, Elizabeth Gendron, Roger Carter, Marlene Rudolph, Patricia Barlow, Teresa Edwards, Issac Tordjman, James Hettinger, Dieu Le, Chris Bohn, Daniel Deweerdt, Craig Boxer, Betty Dendy, Elizabeth Persak, Kristi Rock, Jennifer Chalal, John Torrance, Lenard Shoemaker, Michael Mitchell, Robert Skelton, Jeffrey Jones, Isabel Marques, Payam Rastegar, and Syed Abdul Nafay.

15.     "Court" means the United States District Court for the Eastern District of New York.

16.     "Covered Vehicles" means the Additional Vehicles, SSC Vehicles, and the Subject Vehicles.

17.     "Date of First Use" (DOFU) means the date that the Covered Vehicle was originally sold or leased by a Toyota Dealer.

10

18. "Defendants" means Toyota and Denso.  Singular "Defendant" means Toyota or Denso.

19. "Denso" means Denso Corporation and DIAM.

20. "Denso's Counsel" means Butzel Long, P.C.

21. "DIAM" means Denso International America, Inc.

22. "Direct Mail Notice" means the notice substantially in the form as attached hereto as Exhibit 6 that shall be sent to current and former owners and lessees of Subject Vehicles as provided in Section IV.B., below, of this Settlement Agreement.

23. "Escrow Account" means the custodial or investment account administered by the Escrow Agent and the Settlement Special Master in which the funds to be deposited will be held, invested, administered, and disbursed pursuant to this Agreement and an Escrow Agreement.

24. "Escrow Agent" means the agreed-upon entity to address and hold for distribution the funds identified in this Agreement pursuant to the terms of an Escrow Agreement. Defendants shall select the Escrow Agent, which shall be agreed to by Class Counsel, whose approval shall not be unreasonably withheld.

25. "Escrow Agreement" means the agreement by and among Class Counsel, Toyota, Denso, and the Escrow Agent with respect to the escrow of the funds to be deposited into the Escrow Account pursuant to this Agreement, which agreement, among other things, shall specify the manner in which the Settlement Special Master shall direct and control, in consultation with Toyota, Denso and Class Counsel, the disbursement of funds in the Qualified Settlement Fund.

26.     "Fairness Hearing" means the hearing for the purposes of the Court determining whether to approve this Settlement Agreement as fair, reasonable, and adequate, and to award Attorneys' Fees, Costs and Expenses and Class Representative service awards.

27.     "Final Effective Date" means the latest date on which the Final Order and/or Final Judgment approving this Settlement Agreement becomes final.   For purposes of this Settlement Agreement:

> 1.     if no appeal has been taken from the Final Order and/or Final Judgment, "Final Effective Date" means the date on which the time to appeal therefrom has expired; or

> 2.     if any appeal has been taken from the Final Order and/or Final Judgment, "Final Effective Date" means the date on which all appeals therefrom, including petitions for rehearing or reargument, petitions for rehearing *en banc*, and petitions for certiorari or any other form of review, have been finally disposed of in a manner that affirms the Final Order or Final Judgment; or

> 3.     subject to Court approval, if Class Counsel, Toyota, and Denso agree in writing, for purposes of fulfilling the terms of the Settlement Agreement, the "Final Effective Date" can occur on any other agreed date.

> 4.     For clarity, neither the provisions of Rule 60 of the Federal Rules of Civil Procedure nor the All Writs Act, 28 U.S.C. § 1651, shall be taken into account in determining the above-stated times.

28.     "Final Judgment" means the Court's final judgment, which is to be on terms substantially consistent with this Agreement.   A proposed form is attached hereto as Exhibit 10.

29.     "Final Order" means the Court's order approving the Settlement Agreement and awarding Attorneys' Fees, Costs and Expenses and Class Representative service awards, which is to be on terms substantially consistent with this Agreement.   A proposed form is attached hereto as Exhibit 11.

30.     "Fuel Pumps" means the low-pressure Denso fuel pumps that were installed as original equipment in the Covered Vehicles and are alleged in the Action to be defective.

31.     "Initial Notice Date" means the date on which the notice is first disseminated by the Settlement Notice Administrator to the Class.

32.     "Loaner/Towing Program" means the program described in Section III.A.2 and Section III.B.2, below.

33.     "Loaner Vehicle" means a vehicle of any potential make, model, or year, provided pursuant to the Customer Support Program and the Extended New Parts Warranty.

34.     "Long Form Notice" means the Long Form Notice substantially in the form attached hereto as Exhibit 5 that shall be available to Class Members as provided in Section IV.E, below, of this Settlement Agreement.

35.     "Notice Program" means the notice plan attached hereto as Exhibit 4 and the plans and methods set forth in Section IV, below, of this Settlement Agreement.

36.     "Opt-Out Deadline" means the date specified by the Court in the Preliminary Approval Order.

37.     "Parties" means Class Representatives, Toyota, and Denso, collectively, as each of those terms is defined in this Settlement Agreement.

38.     "Plaintiffs' Counsel" means counsel for plaintiffs in the Action, W. Daniel "Dee" Miles, Demet Basar, Clay Barnett, III, and J. Mitch Williams of Beasley, Allen, Crow,

Methvin, Portis, & Miles, P.C.; Jeffrey R. Krinsk of Finkelstein & Krinsk LLP; Jeffrey Corrigan, John A. Macoretta, and Jeffrey L. Spector, of Spector Roseman, & Kodroff, PC; Malcolm T. Brown and Kate McGuire of Wolf Haldenstein Adler Freeman & Herz, LLP; and Jerrod C. Patterson of Hagens, Berman, Sobol, and Shapiro LLP.

39.     "Preliminary Approval Order" means the order to be entered by the Court preliminarily approving the settlement as outlined in Section IX, below, and to be substantially consistent with this Agreement.  A proposed form is attached hereto as Exhibit 3.

40.     "Publication Notice" means the notice substantially in the form attached hereto as Exhibit 7.

41.     "Recall(s)" means Toyota's recalls of the Subject Vehicles, namely, Toyota's Recall 20V-012 submitted to NHTSA on or about January 13, 2020, the amendments submitted for Recall 20V-682 on or about November 4, 2020, and the amendments submitted for Recall 21V-617 on or about August 6, 2021, as identified in Exhibit 2, and any expansions related thereto prior to Preliminary Approval.

42.     "Release" means the release and waiver set forth in Section VII, below, of this Settlement Agreement and in the Final Judgment and Final Order.

43.     "Released Parties" or "Released Party" means any Toyota entity, including, but not limited to, TMC, TMNA, Toyota Motor Sales, U.S.A., Inc., Toyota Motor Engineering and Manufacturing North America, Inc., Toyota Motor Manufacturing Indiana, Inc., Toyota Motor Manufacturing Kentucky, Inc. and each of their past, present, and future parents, predecessors, successors, spin-offs, assigns, holding companies, joint-ventures and joint-venturers, partnerships and partners, members, divisions, stockholders, bondholders, subsidiaries, related companies, affiliates, officers, directors, employees, associates, dealers, representatives, suppliers, vendors,

advertisers, service providers, distributors and sub-distributors, agents, attorneys, administrators, and advisors; and any Denso entity, including, but not limited to, Denso International America, Inc., Denso Corporation, Associated Fuel Pump Systems Company (AFCO), Denso Manufacturing Athens Tennessee, Inc., Kyosan Denso Manufacturing Kentucky, LLC, and each of their past, present, and future parents, predecessors, successors, spin-offs, assigns, holding companies, joint-ventures and joint-venturers, partnerships and partners, members, divisions, stockholders, bondholders, subsidiaries, related companies, affiliates, officers, directors, employees, associates, dealers, representatives, suppliers, vendors, advertisers, service providers, distributors and sub-distributors, agents, attorneys, administrators, and advisors.  The Parties expressly acknowledge that each of the foregoing is included as a Released Party even though not identified by name herein.

44.    "Salvaged Vehicle" means a vehicle for which the title, at any point, was transferred to a salvage yard, junkyard, wreckage facility, or similar entity.

45.    "Settlement Claims Administrator" shall mean Patrick A. Juneau and Patrick Hron of Juneau David, APLC, agreed to by the Parties and submitted to the Court for appointment.

46.    "Settlement Notice Administrator" means the Court-appointed third-party agent or administrator agreed to by the Parties and submitted to the Court for appointment to implement the Notice Program and address the Claims Process.  The Parties agree that Jeanne Finegan of Kroll Notice Media shall serve as Settlement Notice Administrator, subject to approval by the Court.

47.     "Settlement Special Master" means Patrick A. Juneau, who was appointed by the Court by Order dated November 2, 2021 to serve as Settlement Special Master to administer, coordinate and preside over all settlement-related proceedings.

48.     "SSC Vehicles" means the vehicles identified as part of the Special Service Campaigns 21LC01 and 21TC03, all of which are equipped with Denso low-pressure fuel pumps with part number prefixes 23220- and/or 23221-, and are listed on Exhibit 1a.

49.     "Subject Vehicles" means those vehicles that were identified as part of the Recall as defined in Section II.A.41, all of which are equipped with Denso low-pressure fuel pumps with part number prefixes 23220- and/or 23221-, and/or are recalled vehicles that are listed in Exhibit 2.

50.     "Supporting Documentation" means evidence supporting a Claim for reimbursement as part of the Out-of-Pocket Claims Process such as proof of ownership/lease of a Covered Vehicle, a receipt, invoice, credit card statement, canceled check, a sworn statement establishing the nature and amount of an expenditure for repairing or replacing a Fuel Pump or an associated towing or rental car rental expense, and other reasonable and practicable evidence as may be accepted by the Settlement Claims Administrator in consultation with Class Counsel, Toyota's Counsel and Denso's Counsel.

51.     "Tax Administrator" means the Court-appointed third-party entity agreed to by the Parties and appointed by the Court to oversee and administer the tax preparation, filing, and related requirements of the Escrow Account, subject to the limits provided in this Agreement.

52.     "TMC" means Toyota Motor Corporation.

53.     "TMNA" means Toyota Motor North America, Inc.

54.     "Toyota" means TMC and TMNA.

55.     "Toyota Dealers" means authorized Toyota dealers.

56.     "Toyota's Counsel" means King & Spalding LLP.

B.      Other capitalized terms used in this Settlement Agreement but not defined in this Section shall have the meanings ascribed to them elsewhere in this Settlement Agreement.

C.      The terms "he or she" and "his or her" include "them," "their," "it," or "its," where applicable.

## III.   SETTLEMENT RELIEF

In consideration for the dismissal of the Action with prejudice, as contemplated in this Settlement Agreement, and for the full and complete Release, Final Judgment, and Final Order, as further specified herein, Defendants shall provide the relief specified in this Section.  The costs and expenses associated with providing the relief and otherwise implementing the relief specified in this Section III of this Settlement Agreement shall be provided by Defendants.

After the issuance of the Preliminary Approval Order signed by the Court, Defendants, at their sole discretion, may, after consultation with Class Counsel, implement the Customer Support Program in advance of the occurrence of the Final Effective Date.

### A.      Additional Vehicles: Customer Support Program

1.      Toyota will offer the Customer Support Program ("CSP") to all Class Members who, as of the Final Effective Date, own or lease Additional Vehicles.  A Class Member's rights under the CSP are transferred with the Additional Vehicle.  Salvaged Vehicles, inoperable vehicles, and vehicles with titles marked flood-damaged are not eligible for this benefit.  The CSP will provide prospective coverage for repairs (including parts and labor) needed to correct defects, if any, in materials or workmanship in the Fuel Pumps for the Additional Vehicles.  The implementation of the CSP will begin no later than 30 days after the Final Effective Date. Coverage

17

under the CSP for the original parts will continue for 15 years, measured from the Date of First Use.

2.      Additional Vehicles: Loaner/Towing Program - Without cost to and upon request from Class Members, who own or lease Additional Vehicles, whose fuel pumps are being replaced pursuant to the CSP, Class Members shall be provided with the same loaner or rental vehicles and/or towing options provided to the owners or lessees of the Subject Vehicles under the Recall(s). In appropriate circumstances, where the Class Member has a demonstrated need for a Loaner Vehicle similar to the Additional Vehicle, Toyota, through its dealers, shall use good faith efforts to satisfy the request.

3.      In the event that any of the Additional Vehicles becomes the subject of a future recall for the same underlying condition, which is the subject of the Plaintiff's Class Action Complaint, those Additional Vehicles will then be entitled and only be entitled to the same relief provided to Subject Vehicles (Section III.B below).

B.      **Subject Vehicles and SSC Vehicles: Extended New Parts Warranty**

1.      Toyota shall extend the new parts warranty coverage for the fuel pump kit replaced ("replacement fuel pump kit") on the Subject Vehicles, pursuant to the Recall, and the SSC Vehicles, pursuant to the SSC.  The extended warranty will last for 15 years, measured from July 15, 2021, and up to 150,000 miles, whichever comes first. A Class Member's rights under the Extended New Parts Warranty are transferred with the Subject Vehicle and SSC Vehicle.

2.      Subject Vehicles and SSC Vehicles: Loaner/Towing Program - Without cost to and upon request from Class Members who own or lease SSC Vehicles or Subject Vehicles whose fuel pumps are being replaced pursuant to the Extended Warranty shall be provided with the same loaner or rental vehicles and/or towing options provided to the Subject Vehicles under the Recall(s).  In appropriate circumstances, where the Class Member has a demonstrated need for a

18

Loaner Vehicle similar to the Subject Vehicle or the SSC Vehicle, Toyota, through its dealers, shall use good faith efforts to satisfy the request.

3.      In the event that any of the SSC Vehicles becomes the subject of a future recall for the same underlying condition, which is the subject of the Plaintiff's Class Action Complaint, those SSC Vehicles will be entitled to the relief provided under the settlement as defined in Section III.B.1-2 above as well as any additional benefits provided pursuant to a future recall.

C.      **Out-of-Pocket Claims Process**

1.      Class Members, during the Claim Submission Period, may submit Claims for previously paid out-of-pocket expenses incurred to repair or replace a Fuel Pump of Covered Vehicles that were not otherwise reimbursed and that were either (a) incurred prior to the Initial Notice Date; or (b) incurred after the Initial Notice Date and before the Final Effective Date.  For costs that were incurred after the Initial Notice Date and before the Final Effective Date, the Class Member must provide proof that they were denied coverage by the Toyota dealer prior to incurring the cost.

2.      Class Members who provide Supporting Documentation and who made repair or replacement of a Fuel Pump on a Covered Vehicle may be reimbursed for: (i) rental vehicles; (ii) towing; and (iii) any unreimbursed repairs or part replacements.  Out-of-pocket expenses that are the result of damage, collision, and/or misuse/abuse will not be eligible for reimbursement. Vehicles where the title, at any point, was transferred to a salvage yard, junkyard, wreckage facility, or similar entity, inoperable vehicles, and vehicles with titles marked flood-damaged are not eligible for this benefit.

3.      As part of the Claims Process, Class Members shall be eligible for the relief in this Section, if Class Members: (a) complete and timely submit Claim Forms, with Supporting

Documentation, to the Settlement Claims Administrator within the Claim Submission Period; (b) have Claims that are eligible for reimbursement; and (c) do not opt out of the settlement.  The Claim Form shall be available on the settlement website and can be submitted in either hard-copy or online.  In no event shall a Class Member be entitled to submit more than one Claim Form per Covered Vehicle.  Claims must be submitted with Supporting Documentation.

4.      The Settlement Notice Administrator shall receive the Claims, whether submitted electronically via the settlement website or in paper copy, and the Settlement Claims Administrator shall administer the review and processing of Claims.  The Settlement Notice Administrator shall have the authority to determine whether Claim Forms submitted by Class Members are complete and timely.

5.      If a Claim is deficient, the Settlement Notice Administrator shall mail a notice of deficiency letter to the Class Member and email notice to the Class Member if an email address was provided, requesting that the Class Member complete and/or correct the deficiencies and resubmit the Claim Form within sixty (60) days of the date of the letter and/or e-mail from the Settlement Notice Administrator.   If the Class Member fails to provide the requested documentation or information, the deficient Claim (or deficient portion thereof) shall be denied without further processing. The Settlement Notice Administrator shall promptly provide complete and timely Claims to the Settlement Claims Administrator for review and determination of relief. The Settlement Claims Administrator shall use reasonable efforts to complete their review of timely and completed Claim Forms within sixty (60) days of receipt.  The Settlement Claims Administrator's review period for submitted Claims shall not be required to commence any earlier than sixty (60) days after the occurrence of the Final Effective Date.

(a)     If accepted for payment, the Settlement Claims Administrator shall pay the Claim of the Class Member and shall use reasonable efforts to pay timely, valid, and approved Claims within sixty (60) days after the later of receipt of the Claim or the date of issuance of the Final Order and Final Judgment.  In order to timely pay claims as set forth in the preceding sentence, the Settlement Claims Administrator shall periodically request funds from Defendants to pay the approved Claims with sufficient time to allow Defendants to obtain and provide the funds to the Settlement Claims Administrator.

(b)     If the Claim is rejected for payment, in whole or in part, the Settlement Claims Administrator shall notify Class Counsel, Toyota's Counsel, and Denso's Counsel of said rejection of Class Member's Claim and the reason(s) why within sixty (60) days of the rejection.  The decision of the Settlement Claims Administrator shall be final; provided, however, that Class Counsel, Toyota's Counsel, and Denso's Counsel may meet and confer to resolve any denied Claims. If Class Counsel, Toyota's Counsel, and Denso's Counsel jointly recommend payment of the rejected Claims or payment of a reduced claim amount, then Toyota's Counsel and/or Denso's Counsel shall inform the Settlement Claims Administrator, who shall instruct Defendants to pay said Claims.  If Class Counsel, Toyota's Counsel, and Denso's Counsel disagree with the Settlement Claims Administrator's initial determination, they shall so notify the Settlement Claims Administrator, with explanation, and the Settlement Claims Administrator shall make a final determination as to whether the Claim shall be paid.  If a Claim is rejected in full or in part, the Settlement Claims Administrator shall direct the

21

Settlement Notice Administrator to mail a notice of rejection letter to the Class Member and email notice to the Class member if an e-mail address was provided.

6.      The Settlement Claims Administrator shall direct the Settlement Notice Administrator to provide status reports to Class Counsel, Toyota's Counsel and Denso's Counsel every six (6) months until the distribution of the last reimbursement check, including copies of all rejection notices.  Any Class Member whose Claim is rejected in full shall not receive any payment for the Claim submitted and shall, in all other respects, be bound by the terms of the Settlement Agreement and by the Final Order and Final Judgment entered in the Action.  Similarly, any Class Member whose Claim is approved in part and rejected in part shall not receive any payment for that portion of the Claim that is rejected and shall, in all other respects, be bound by the terms of the Settlement Agreement and by the Final Order and Final Judgment entered in the Action.

7.      No person shall have any claim against Toyota, Denso, the Settlement Claims Administrator, the Settlement Special Master, Class Representatives, the Class, Plaintiffs' Counsel, Class Counsel, Toyota's Counsel, Denso's Counsel, or the Settlement Notice Administrator based on any eligibility determinations.

8.      For any checks that are uncashed by Class Members after 90 days, the Settlement Notice Administrator shall seek to contact the Class Members with the uncashed checks and have them promptly cash the checks, including, but not limited to, by reissuing checks.  If the Settlement Notice Administrator is not successful at getting Class Members to cash a check within six months of the issuance of the check, the amount of the check will revert to Defendants.

D.      **Reconsideration Procedure for Denial of Coverage**

1.      If a Class Member and/or subsequent purchaser/lessee of a Covered Vehicle is denied coverage for repairs (including parts and labor), if any, in materials or workmanship in the Fuel Pumps, pursuant to Section III.A.1 or Section III.B.1 of this Settlement Agreement, the Class

Member and/or subsequent purchaser/lessee may take the Covered Vehicle to a second Toyota Dealer for an independent determination.  If the second Toyota Dealer determines that the Covered Vehicle qualifies for a repair and/or replacement of the fuel pump kit, the Class Member shall be provided those benefits as provided in this Agreement.

E.    **Duties of the Settlement Claims Administrator**

1.    The Settlement Claims Administrator shall carry out the terms and conditions of the Out-of-Pocket Claims Process in this Agreement.  The Settlement Claims Administrator shall be responsible for, without limitation: (a) timely and efficiently coordinating with the Settlement Notice Administrator regarding the transfer, receipt and review of Out-of-Pocket Claims from Claimants; (b) reviewing Out-of-Pocket Claims; (c) determining whether additional information is needed to process Out-of-Pocket Claims and instructing the Settlement Notice Administrator to inform the Claimants of said requests; (d) determining if Out-of-Pocket Claims are valid and entitled to relief; (e) providing a chart of relief awards, if any, for Out-of-Pocket Claims received by the Settlement Claims Administrator to the Settlement Notice Administrator; (f) providing such other information that is reasonably requested by the Settlement  Notice Administrator and/or the Parties; (g) reviewing and approving/rejecting, in whole or in part, the prospective rental and towing charges of Class Members relating to the Loaner/Towing Program; (h) coordinating with the Parties and the Settlement Notice Administrator to address and resolve issues regarding out-of-pocket reimbursement denials; and (i) coordinating with the Parties, the Settlement Notice Administrator and the Settlement Special Master to address and resolve issues regarding any disputes by Class Member relating to the denial of any benefits under this Settlement.

2.    If the Settlement Claims Administrator makes a material or fraudulent misrepresentation to any party, conceals requested material information, or fails to perform adequately on behalf of Toyota, Denso or the Class, the Parties may agree to remove the Settlement

23

Claims Administrator. Disputes regarding the retention or dismissal of the Settlement Claims Administrator shall be referred to the Court for resolution.

3.      The Settlement Claims Administrator shall maintain staffing sufficient to perform all duties delegated to the Settlement Claims Administrator in this Settlement Agreement and shall appoint a designated staff member to act as liaison with Class Counsel, Toyota's Counsel and Denso's Counsel.

4.      In the event of a communication sent by a Class Member that should have been properly sent to the Settlement Special Master and/or the Party(ies), the Settlement Special Master and the Parties, through their respective counsel, shall promptly, after receipt, provide copies of any correspondence to each other that should properly be delivered to the Settlement Special Master and/or counsel for the other Party.

F.      **Settlement Oversight**

1.      In the event there remains a dispute by a Class Member relating to entitlement to any benefit under the Customer Support Program, the Loaner/Towing Program, the Extended New Parts Warranty, and/or Out-of-Pocket Claims Process that is not resolved after exhausting all other means of resolution available under this Settlement,  the Settlement Claims Administrator or the Settlement Notice Administrator, as the case may be, shall provide a written notice of same, together with all necessary documentation, to the Settlement Special Master, Class Counsel, Toyota's Counsel and Denso's Counsel within fifteen (15) days of the final act constituting the denial of the benefit. Class Counsel, Toyota's Counsel, and Denso's Counsel shall confer and either make a joint recommendation to the Settlement Claims Administrator or separately relay their positions concerning the dispute to the Settlement Claims Administrator within thirty (30) days. The Settlement Claims Administrator shall make a final determination concerning the dispute and provide written notice of same, with directions for implementation, to the Parties, or

24

Settlement Notice Administrator within thirty (30) days. Toyota's Counsel, Denso's Counsel, and/or the Settlement Notice Administrator shall implement the Settlement Claims Administrator's determination within thirty (30) days; provided, however, that if the determination was to allow, in full or in part, a previously denied Claim, the Settlement Notice Administrator shall pay the Claim in the next distribution of checks for allowed Claims.

2. During the twelve (12) months after the Final Effective Date, the Settlement Claims Administrator and the Settlement Notice Administrator, with cooperation of Toyota's Counsel and Denso's Counsel, shall provide quarterly reports to Class Counsel concerning the implementation of and Class Member participation in the Customer Support Program.

## IV. **NOTICE TO THE CLASS**

### A. **Class Notice**

1. Class Notice will be accomplished through a combination of Direct Mail Notice, Publication Notice, notice through the settlement website, Long Form Notice, social media notice, and such other notice as Class Counsel or Defendant believe is required by Fed. R. Civ. P. 23, the Due Process Clause of the United States Constitution, and all other applicable statutes, laws and rules, including those described below, as well as those in the Preliminary Approval Order, the Declaration of the Settlement Notice Administrator and the Notice Plan (attached hereto as Exhibits 9 and 4), and this Settlement Agreement. The Notice Program shall be carried out in substantially the manner provided in this Settlement Agreement. The costs of the Notice Program, including disseminating the notice and otherwise implementing the notice specified in this Section IV of this Settlement Agreement, shall be paid by Defendants.

### B. **Direct Mail Notice**

1. Consistent with the timeline specified in the Preliminary Approval Order, the Settlement Notice Administrator shall begin to send the Direct Mail Notice, substantially in the

25

form attached hereto as Exhibit 6, by U.S. Mail, proper postage prepaid, to the current and former registered owners of Covered Vehicles, as identified by data to be forwarded to the Settlement Notice Administrator by IHS Automotive, Driven by Polk.  The Direct Mail Notice shall inform those persons of how to obtain the Long Form Notice via the settlement website, via regular mail or via a toll-free telephone number, pursuant to Sections IV.D through F, below.  In addition, the Settlement Notice Administrator shall: (a) re-mail any notices returned by the United States Postal Service with a forwarding address; (b) by itself or using one or more address research firms, as soon as practicable following receipt of any returned notices that do not include a forwarding address, research such returned mail for better addresses and promptly mail copies of the applicable notice to any updated addresses so found.

2.      The QR code associated with the Direct Notice shall remain active and the link associated with the QR code shall be maintained in proper working order by the Settlement Notice Administrator for the duration of the Customer Support Program.

C.      **Publication Notice**

1.      Consistent with the timeline specified in the Preliminary Approval Order, the Settlement Notice Administrator shall cause the publication of the Publication Notice, as described in the Notice Plan, in such additional newspapers, magazines, and/or other media outlets as shall be agreed upon by the Parties. The form of the Publication Notice agreed upon by the Parties is in the form substantially similar to the one attached to the Agreement as Exhibit 7.

D.      **Settlement Website**

1.      The Settlement Notice Administrator shall establish a settlement website that will inform Class Members of the terms of this Settlement Agreement, their rights, dates and deadlines and related information. The website shall include, in .pdf format, materials agreed upon by the

Parties and/or required by the Court, including, but not limited to, the Settlement Agreement, the Publication Notice, Frequently Asked Questions and Answers, and Court documents that may be of interest to most Class Members.

      E.    **Long Form Notice**

      1.    <u>Contents of Long Form Notice</u>.

The Long Form Notice shall be in a form substantially similar to the document attached to this Settlement Agreement as Exhibit 5, and shall advise Class Members of the following:

      1.    <u>General Terms</u>: The Long Form Notice shall contain a plain and concise description of the nature of the Action, the history of the Action, the preliminary certification of the Class for settlement purposes, and the Settlement Agreement, including information on the identity of Class Members, how the Settlement Agreement would provide relief to the Class and Class Members, the Release under the Settlement Agreement, and other relevant terms and conditions.

      2.    <u>Opt-Out Rights</u>: The Long Form Notice shall inform Class Members that they have the right to opt out of the settlement. The Long Form Notice shall provide the deadlines and procedures for exercising this right.

      3.    <u>Objection to Settlement</u>: The Long Form Notice shall inform Class Members of their right to object to the Settlement Agreement, the requested award of Attorneys' Fees, Costs and Expenses, and/or the requested Class Representative service awards, and to appear at the Fairness Hearing. The

Long Form Notice shall provide the deadlines and procedures for exercising these rights.

4.      Fees and Expenses: The Long Form Notice shall inform Class Members about the amounts being sought by Class Counsel as Attorneys' Fees, Costs and Expenses and individual awards to Class Representatives, and shall explain that Defendants will pay the fees and expenses awarded to Class Counsel and individual awards to Class Representatives in addition to amounts being made available for relief to Class Members by this Settlement Agreement.

2.      Dissemination of Long Form Notice.

The Long Form Notice shall be available on the settlement website.  The Settlement Notice Administrator shall send, via first-class mail, the Long Form Notice to those persons who request it in writing or through the toll-free telephone number.

F.      **Toll-Free Telephone Number**

The Settlement Notice Administrator shall establish a toll-free telephone number that will provide settlement-related information to Class Members.

G.      **Internet Banner Notifications**

The Settlement Notice Administrator shall, pursuant to the Parties' agreement, establish banner notifications on the internet and a social media program that will provide settlement-related information to Class Members and shall utilize additional internet-based notice efforts as to be agreed to by the Parties.

H.      **Class Action Fairness Act Notice**

28

The Settlement Notice Administrator shall send to each appropriate State and Federal official, the materials specified in 28 U.S.C. § 1715, and shall otherwise comply with its terms. The identities of such officials and the content of the materials shall be mutually agreeable to the Parties and in all respects comport with statutory obligations.

I.     **Duties of the Settlement Notice Administrator**

1.     The Settlement Notice Administrator shall be responsible for, without limitation: (a) printing, mailing or arranging for the mailing of the Direct Mail Notice; (b) handling returned mail not delivered to Class Members; (c) attempting to obtain updated address information for any Direct Mail Notices returned without a forwarding address; (d) making any additional mailings required under the terms of this Settlement Agreement; (e) responding to requests for Long Form Notice; (f) receiving and maintaining on behalf of the Court any Class Member correspondence regarding requests for exclusion and/or objections to the Settlement Agreement; (g) forwarding written inquiries to Class Counsel or their designee for a response, if warranted; (h) establishing a post-office box for the receipt of any correspondence; (i) responding to requests from Class Counsel, Toyota's Counsel, and Denso's Counsel; (j) establishing and maintaining a website and toll-free voice response unit with message capabilities to which Class Members may refer for information about the Action and the Settlement Agreement; (k) otherwise implementing and/or assisting with the dissemination of the notice of the Settlement Agreement; (l) coordinating with the Settlement Claims Administrator regarding the forwarding of Claims for reimbursement as part of the Out-of-Pocket Claims Process, and (m) coordinating with the Parties, the Settlement Claims Administrator and the Settlement Special Master concerning any disputes by Class Members relating to the denial of any benefits under this Settlement.  The Settlement Notice Administrator shall also be responsible for, without limitation, implementing the terms of

29

the Claims Process and related administrative activities, as discussed above in this Settlement Agreement.   The Settlement Notice Administrator shall be responsible for arranging for the publication of the Publication Notice, establishing internet banner notifications, and for consulting on Class Notice.  The Settlement Notice Administrator shall perform their responsibilities so as to minimize costs in effectuating the terms of this Settlement Agreement.

2.      If the Settlement Notice Administrator makes a material or fraudulent misrepresentation to any party, conceals requested material information, or fails to perform adequately on behalf of Toyota, Denso, or the Class, the Parties may agree to remove the Settlement Notice Administrator.  Disputes between the Parties regarding the retention or dismissal of the Settlement Notice Administrator shall be referred to the Court for resolution.

3.      The Settlement Notice Administrator may retain one or more persons to assist in the completion of his or her responsibilities.

4.      Not later than 5 days before the date of the Fairness Hearing, the Settlement Notice Administrator shall file with the Court a list of those persons who sought to exclude themselves from this Settlement and the terms of this Settlement Agreement.  Not later than 7 days before the date of the Fairness Hearing, the Settlement Notice Administrator shall file with the Court an affidavit setting forth the details outlining the scope, method, and results of the Notice Program.

5.      The Settlement Notice Administrator and the Parties shall, promptly after receipt, provide copies of any requests for exclusion, objections, and/or related correspondence to each other.

J.      **Self-Identification**

Persons or entities who believe that they are Class Members, but did not previously receive Direct Mail Notice, may contact Class Counsel or the Settlement Notice Administrator and provide necessary documentation indicating that they wish to be eligible for the relief provided in this Settlement Agreement.

**V.     REQUESTS FOR EXCLUSION**

A.      Any Class Member who wishes to be excluded from the Class must mail a written request for exclusion to the Settlement Notice Administrator at the address provided in the Long Form Notice, specifying that he or she wants to be excluded and otherwise complying with the terms stated in the Long Form Notice and Preliminary Approval Order.  The written request must include:

1.      The case name and number of the Action;

2.      The excluding Class Member's full name, current residential address, mailing address (if different), telephone number, and e-mail address;

3.      An explanation of the basis upon which the excluding Class Member claims to be a Class Member, including the make, model year, and VIN(s) of the Subject Vehicle(s);

4.      A request that the Class Member wants to be excluded from the Class; and

5.      The excluding Class Member's dated, handwritten signature (an electronic signature or attorney's signature is not sufficient).

B.      The Settlement Notice Administrator shall forward copies of any written requests for exclusion to Class Counsel, Toyota's Counsel, and Denso's Counsel.  A list reflecting all timely, valid requests for exclusion shall be filed with the Court by the Settlement Notice Administrator no later than 5 days before the Fairness Hearing.  If a potential Class Member files a request for exclusion, he or she may not file an objection under Section VI, below.

31

C.      Any Class Member who does not file a timely, valid written request for exclusion as provided in this Section V shall be bound by all subsequent proceedings, orders, and judgments, including, but not limited to, the Release, Final Judgment, and Final Order in the Action, even if he, she, or it has litigation pending or subsequently initiates litigation against Toyota and/or Denso relating to the claims and transactions released in the Action.

D.      Toyota's Counsel shall provide to the Settlement Notice Administrator, within 20 business days of the entry of the Preliminary Approval Order, a list of all counsel for anyone who has then-pending litigation against Toyota relating to claims involving the Covered Vehicles and/or otherwise covered by the Release.

## VI.   OBJECTIONS TO SETTLEMENT

A.      Any Class Member who has not excluded themselves pursuant to Section V and wishes to object to the Settlement Agreement, the requested award of Attorneys' Fees, Costs, and Expenses, and/or the requested Class Representative service awards must (1) file their objection electronically with the Court on or before the date specified in the Preliminary Approval Order, or (2) mail their objection to the Clerk of the Court, Class Counsel, and Defendants' counsel with a postmark dated on or before the date specified in the Preliminary Approval Order. For an objection to be considered by the Court, the objection must be received by the Court on or before the deadline established by the Court for submitting objections.  For an objection to be considered by the Court, the objection must also set forth:

1.      The case name and number of the Action;

2.      The objector's full name, current residential address, mailing address (if different), telephone number, and e-mail address;

32

3.     An explanation of the basis upon which the objector claims to be a Class Member, including the make, model year, and VIN(s) of the Covered Vehicle(s), and whether the Covered Vehicle is currently owned or currently leased by the Class Member;

4.     Whether the objection applies only to the objector, to a specific subset of the Class or to the entire Class, and all grounds for the objection, accompanied by any legal support for the objection, and any documents or other evidence the objector believes supports the objection;

5.     The number of times the objector has objected to a class action settlement within the five years preceding the date that the objector files the objection to this Settlement, the caption and case number of each case in which the objector has made such objection and the caption and case number of any related appeal, and a copy of any orders related to or ruling upon the objector's prior such objections that were issued by the trial and appellate courts in each listed case;

6.     The full name, telephone number, mailing address, and e-mail address of all counsel who represent the objector, including any former or current counsel who may be entitled to compensation for any reason related to the objection to the Settlement Agreement and/or the request for Attorneys' Fees, Costs and Expenses;

7.     The identity of all counsel representing the objector who will appear at the Fairness Hearing;

8.     The number of times the objector's counsel has objected to a class action settlement within the five years preceding the date that they have filed the objection, and the caption and case number of each case in which objector's counsel has made such objection and the caption and case number of any related appeal;

9.      If the Class Member or his or her counsel have not made any such prior objection, the Class Member shall affirmatively so state in the written materials provided with the objection;

10.      A list of all persons who will be called to testify at the Fairness Hearing in support of the objection;

11.      A statement confirming whether the objector intends to personally appear and/or testify at the Fairness Hearing; and

12.      The objector's original signature and date of signature. Each objection must be personally signed by the objector (an electronic signature or attorney's signature is not sufficient).

B.      Any Class Member who fails to comply with the provisions of Section VI.A, above, shall be deemed to have waived and forfeited any and all rights he or she may have to appear separately and object, whether by a subsequent objection, intervention, appeal, or any other process, and shall be bound by all the terms of this Settlement Agreement and by all proceedings, orders and judgments, including, but not limited to, the Release, the Final Order, and the Final Judgment in the Action.  The exclusive means for any challenge to the Settlement Agreement shall be through the provisions of this Section VI.A.  Without limiting the foregoing, any challenge to the Settlement Agreement, Final Order, or Final Judgment shall be pursuant to appeal under the Federal Rules of Appellate Procedure and not through collateral proceedings.  Class Members may not both object and request exclusion (opt out).

C.      Any Class Member who objects to the Settlement Agreement shall be entitled to all the benefits of the Settlement Agreement if the Settlement Agreement and the terms contained

herein are approved, as long as the objecting Class Member complies with all requirements of this Settlement Agreement applicable to Class Members.

## VII.   RELEASE AND WAIVER

A.      The Parties agree to the following release and waiver, which shall take effect upon entry of the Final Judgment and Final Order.

B.      In consideration for the Settlement Agreement, Class Representatives, and each Class Member, on behalf of themselves and any other legal or natural persons who may claim by, through, or under them, agree to fully, finally, and forever release, relinquish, acquit, and discharge the Released Parties from any and all claims, demands, suits, petitions, liabilities, causes of action, rights, and damages of any kind and/or type regarding the subject matter of the Action, including, but not limited to, compensatory, exemplary, punitive, expert and/or attorneys' fees or by multipliers, whether past, present, or future, mature, or not yet mature, known or unknown, suspected or unsuspected, contingent or non-contingent, derivative or direct, asserted or un-asserted, whether based on federal, state or local law, statute, ordinance, regulation, code, contract, common law, violations of any state's deceptive, unlawful, or unfair business or trade practices, false, misleading or fraudulent advertising, consumer fraud or consumer protection statutes, any breaches of express, implied or any other warranties, RICO, or the Magnuson-Moss Warranty Act, or any other source, or any claim of any kind arising from, related to, connected with, and/or in any way involving the Action, the Covered Vehicles' Fuel Pumps, and/or associated parts that are, or could have been, defined, alleged, or described in the Class Action Complaint, the Action, or any amendments of the Class Action Complaint ("Released Claims"); provided, however, that notwithstanding the foregoing, Class Representatives and the other Class Members are not releasing claims for personal injury, wrongful death or physical property damage (except to the Fuel Pump in the Covered Vehicle itself) from the Covered Vehicle.

C.      Notwithstanding the foregoing, Class Representatives and/or the other Class Members shall hold Released Parties harmless for all Released Claims that may be asserted by another legal or natural person (including but not limited to legal guardians and estate administrators) who claim by, through, or under that Class Representative or Class Member.

D.      The Final Order will reflect the terms of this Release.

E.      Class Representatives, on behalf of the other Class Members and through Class Counsel, expressly agree that this Release, the Final Order, and/or the Final Judgment is, will be, and may be raised as a complete defense to, and will preclude any action or proceeding encompassed by, this Release.

F.      Class Representatives and Class Members shall not now or hereafter institute, maintain, prosecute, assert, and/or cooperate in the institution, commencement, filing, or prosecution of any suit, action, and/or proceeding, against the Released Parties, either directly or indirectly, on their own behalf, on behalf of a class or on behalf of any other person or entity with respect to the claims, causes of action and/or any other matters released through this settlement and the Settlement Agreement.

G.      In connection with the Settlement Agreement, Class Representatives, on behalf of the other Class Members, acknowledge that they and other Class Members may hereafter discover claims presently unknown or unsuspected, or facts in addition to or different from those that they now know or believe to be true concerning the subject matter of the Action and/or the Release herein. Nevertheless, it is the intention of Class Counsel and Class Representatives in executing this Settlement Agreement to fully, finally, and forever settle, release, discharge, and hold harmless all such matters, and all claims relating thereto which exist, hereafter may exist, or might have existed (whether or not previously or currently asserted in any action or proceeding) with respect

36

to the Action, provided, however, that Class Representatives and the other Class Members are not releasing claims for personal injury, wrongful death or physical property damage (except to the Fuel Pump in the Covered Vehicle itself) from the Covered Vehicle.

H.      Class Representatives expressly understand and acknowledge that they will be deemed by the Final Judgment and Final Order to acknowledge and waive Section 1542 of the Civil Code of the State of California, which provides that:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

Class Representatives expressly waive and relinquish any and all rights and benefits that they may have under, or that may be conferred upon them by, the provisions of Section 1542 of the California Civil Code, or any other law of any state or territory that is similar, comparable or equivalent to Section 1542, to the fullest extent they may lawfully waive such rights.

I.      Class Representatives represent and warrant that they are the sole and exclusive owners of all claims that they personally are releasing under this Settlement Agreement.  Class Representatives further acknowledge that they have not assigned, pledged, or in any manner whatsoever sold, transferred, assigned, or encumbered any right, title, interest, or claim arising out of or in any way whatsoever pertaining to the Action, including, without limitation, any claim for benefits, proceeds, or value under the Action, and that Class Representatives are not aware of anyone other than themselves claiming any interest, in whole or in part, in the individual claims that they are releasing under the Settlement Agreement or in any benefits, proceeds, or values in the individual claims that they are releasing under the Settlement Agreement.

J.      Without in any way limiting its scope, and, except to the extent otherwise specified in the Agreement, this Release covers by example and without limitation, any and all claims for attorneys' fees,  expert or consultant fees, interest, litigation expenses, or any other fees, costs, and/or disbursements incurred by Class Counsel, Plaintiffs' Counsel, Class Representatives, or other Class Members who claim to have assisted in conferring the benefits under this Settlement Agreement upon the Class.

K.      In consideration for the Settlement Agreement, Toyota and Denso and their past or present officers, directors, employees, agents, attorneys, predecessors, successors, affiliates, subsidiaries, divisions, successors and assigns shall be deemed to have, and by operation of the Final Order shall have, released Plaintiffs' Counsel, Class Counsel, and each Class Representative from any and all causes of action that were or could have been asserted pertaining solely to the conduct in filing and prosecuting the litigation or in settling the Action.

L.      Class Representatives, Plaintiffs' Counsel, Class Counsel, and any other attorneys who receive attorneys' fees and costs from this Settlement Agreement acknowledge that they have conducted sufficient independent investigation and discovery to enter into this Settlement Agreement and, by executing this Settlement Agreement, state that they have not relied upon any statements or representations made by the Released Parties or any person or entity representing the Released Parties, other than as set forth in this Settlement Agreement.

M.      The Parties specifically understand that there may be further pleadings, discovery requests and responses, testimony, or other matters or materials owed by the Parties pursuant to existing pleading requirements, discovery requests, or pretrial rules, procedures, or orders, and that, by entering into this Settlement Agreement, the Parties expressly waive any right to receive, hear, or inspect such pleadings, testimony, discovery, or other matters or materials.

38

N.      Nothing in this Release shall preclude any action to enforce the terms of the Settlement Agreement, including participation in any of the processes detailed herein.

O.      Class Representatives and Class Counsel hereby agree and acknowledge that the provisions of this Release together constitute an essential and material term of the Settlement Agreement and shall be included in any Final Judgment and Final Order entered by the Court.

## VIII.    QUALIFIED SETTLEMENT FUND

A.      The Parties, through their respective counsel, shall move the Court to establish and create a Qualified Settlement Fund ("QSF"), pursuant to Internal Revenue Code § 468B and the Regulations issued thereto, which shall be used to deposit and distribute Class Counsel's Attorneys' Fees, Costs, and Expenses and Class Representative service awards awarded by the Court, with the QSF to be held by the Escrow Agent. All payments to be made by Defendants pursuant to this Agreement shall be made by wire transfer into an Escrow Account, established and controlled consistent with and pursuant to an Escrow Agreement at a mutually-agreed-upon bank with a preference for a bank located in New York State. The Escrow Agent shall invest the payments in short-term United States Agency or Treasury Securities (or a mutual fund invested solely in such instruments), or in a United States Government fully-insured account, and shall collect and reinvest any and all interest accrued thereon, if applicable, unless interest rates are such that they would effectively preclude investment in interest-bearing instruments as defined herein. All (i) taxes on the income of the Escrow Account and (ii) expenses and costs incurred with taxes paid from the Escrow Account (including, without limitation, expenses of tax attorneys, accountants, and the Tax Administrator) (collectively, "Taxes") shall be timely paid by Defendants without prior Order of the Court. All other expenses related to the Escrow Account and/or QSF (including but not limited to the payment of the Escrow Account officer), shall be paid for separately, by Defendants. The Parties agree that the Escrow Agent, with the assistance of the Tax

Administrator, shall be responsible for filing tax returns for the QSF and paying from the Escrow Account any Taxes owed with respect to the QSF.

B.      The Parties hereto agree that the Escrow Account shall be treated as a QSF from the earliest date possible and agree to any relation back election required to treat the Escrow Account as a QSF from the earliest date possible. The Escrow Account shall be initially comprised of one fund which shall be a single QSF. Toyota, Denso, the Settlement Special Master, Class Representatives, and Class Counsel shall have no responsibility with respect to taxes owed by the QSF or Class Members who receive distributions from the QSF pursuant to this Settlement Agreement.

C.      Following the Court's grant of Final Approval, on agreement by the parties, the Settlement Special Master may distribute funds from the QSF.

D.      If the Court does not grant final approval to the Settlement, any funds remaining in the QSF shall revert to Defendants, as per their contributions, and any such funds paid into the QSF and not returned to Defendants will be credited towards any eventual settlement that may be approved.

IX.   **ATTORNEYS' FEES, COSTS, AND EXPENSES AND CLASS REPRESENTATIVE SERVICE AWARDS**

A.      At the conclusion of the Parties reaching agreement on the substantive material terms of this Settlement Agreement, the Parties mediated attorneys' fees and costs and individual Class Representative service awards with the assistance of Settlement Special Master Patrick A. Juneau.  Following a series of intensive negotiations between the Parties and the Settlement Special Master Juneau on August 11, 2022, the Parties requested that Settlement Special Master Juneau propose a mediator's number for the amount of attorneys' fees; Settlement Special Master Juneau provided the Parties with a mediator's recommendation of $28,500,000.00 for Class Counsel

attorneys' fees.  After further evaluation, the Parties subsequently agreed to accept the Settlement Special Master Juneau's mediator number.

B.      Additionally, as a result of additional negotiations, Class Counsel agreed to limit any petition for an award of costs and expenses in the Action to $500,000.00, and further agreed that Class Counsel may petition the Court for (i) Class Representative service awards of up to $3,500.00 for Class Representatives who had their vehicles inspected by the Defendants for their time in connection with the Action; and (ii) Class Representative service awards of up to $2,500.00 for Class Representatives who did not have their vehicles inspected by the Defendant for their time in connection with the Action.  A total of up to 4 Class Representatives had their vehicles inspected, resulting in an amount up to $14,000.00.  A total of 29 Class Representatives did not have their vehicles inspected, resulting in an amount of $72,500.00.  The full amount of service awards for all 33 Class Representatives is up to $86,500.00.

C.      Defendants agree to deposit the amount of the Attorneys' Fees, Costs, and Expenses and Class Representative service awards into a QSF no later than ninety (90) days from the date of the issuance of the preliminary approval order by the Court.  The timing of the distribution of the Attorneys' Fees, Costs, and Expenses and Class Representative service awards, as awarded by the Court in the issued Final Order, shall be at the discretion of the Settlement Special Master.

D.      Separate and apart from the consideration for this settlement, following application to the Court and subject to Court approval, the Attorneys' Fees, Costs, and Expenses and Class Representative awards actually awarded by the Court shall be disbursed by Settlement Special Master Juneau from the funds deposited by Defendants in the QSF as the fee award and costs and expense reimbursement to Plaintiffs' Counsel and to the Class Representatives as service awards. The Attorneys' Fees, Costs, and Expenses actually awarded by the Court shall be the sole

compensation paid by Defendants for all Plaintiffs' Counsel in the Action and/or for work incurred that inured to the benefit of the Class.

E.     No order of the Court, or modification or reversal or appeal of any order of the Court, concerning the amount(s) of any Attorneys' Fees, Costs, and Expenses awarded by the Court to Class Counsel, or concerning the amounts of Class Representative service awards that are awarded by the Court to Class Representatives, shall affect whether the Final Order and Final Judgment are final and shall not constitute grounds for cancellation or termination of the settlement.

## X.     PRELIMINARY APPROVAL ORDER, FINAL ORDER, FINAL JUDGMENT, AND RELATED ORDERS

A.     On or before September 7, 2022, the Parties shall seek from the Court a Preliminary Approval Order in a form substantially similar to Exhibit 3.  The Preliminary Approval Order shall, among other things:

1.     Certify a nationwide settlement-only Class, approve Class Representatives as Class Representatives, and appoint Class Counsel as counsel for the Class, pursuant to Fed. R. Civ. P. 23;

2.     Preliminarily approve the Settlement Agreement;

3.     Require the dissemination of the Notice and the taking of all necessary and appropriate steps to accomplish this task;

4.     Determine that Class Notice and the Notice Program comply with all legal requirements, including, but not limited to, Fed. R. Civ. P. 23 and the Due Process Clause of the United States Constitution;

42

5.     Schedule a date and time for a Fairness Hearing to determine whether the Settlement Agreement should be finally approved by the Court, and whether the requested Attorneys' Fees, Costs and Expenses and Class Representative service awards should be granted;

6.     Require Class Members who wish to exclude themselves to submit an appropriate and timely written request for exclusion as directed in this Settlement Agreement and Long Form Notice and provide that a failure to do so shall bind those Class Members who remain in the Class;

7.     Require Class Members who wish to object to this Settlement Agreement to submit an appropriate and timely written statement as directed in this Settlement Agreement and Long Form Notice;

8.     Require attorneys representing Class Members objecting to the Settlement Agreement, at such Class Members' expense, to file a timely notice of appearance with the Court as directed in the Long Form Notice;

9.     Issue a preliminary injunction and stay all other actions, pending final approval by the Court;

10.     Issue a preliminary injunction enjoining potential Class Members, pending the Court's determination of whether the Settlement Agreement should be given final approval, from challenging in any action or proceeding any matter covered by this Settlement Agreement, except for proceedings in this Court to determine whether the Settlement Agreement will be given final approval;

11.     Appoint the Settlement Notice Administrator and the Settlement Claims Administrator;

12.     Authorize Toyota and/or Denso to take all necessary and appropriate steps to establish the means necessary to implement the Settlement Agreement; and

13.     Issue other related orders to effectuate the preliminary approval of the Settlement Agreement.

B.     After the Fairness Hearing, the Parties shall seek to obtain from the Court a Final Order and Final Judgment in the forms substantially similar to Exhibits 11 and 10, respectively. The Final Judgment and Final Order shall, among other things:

1.     Find that the Court has personal jurisdiction over all Class Members, that the Court has subject matter jurisdiction over the claims asserted in the Action, and that venue is proper;

2.     Confirm the certification of the Class for settlement purposes only, pursuant to Fed. R. Civ. P. 23;

3.     Finally approve the Settlement Agreement, pursuant to Fed. R. Civ. P. 23;

4.     Find that the Class Notice and the Notice Program comply with all laws, including, but not limited to, Fed. R. Civ. P. 23 and the Due Process Clause of the United States Constitution;

5.     Dismiss the Action with prejudice and without costs (except as provided for herein as to costs);

6.     Incorporate the Release set forth in the Agreement and make the Release effective as of the date of the Final Order and Final Judgment;

7.     Issue a permanent injunction;

8.     Authorize the Parties to implement the terms of the Settlement Agreement;

9.     Retain jurisdiction relating to the administration, consummation, enforcement, and interpretation of the Settlement Agreement, the Final Order and Final Judgment, and for any other necessary purpose; and

10.     Issue related Orders to effectuate the final approval of the Settlement Agreement and its implementation.

## XI.     MODIFICATION OR TERMINATION OF THIS SETTLEMENT AGREEMENT

A.     The terms and provisions of this Settlement Agreement may be amended, modified, or expanded by written agreement of the Parties and approval of the Court; provided, however, that after entry of the Final Order and Final Judgment, the Parties may by written agreement effect such amendments, modifications, or expansions of this Settlement Agreement and its implementing documents (including all exhibits hereto) without further notice to the Class or approval by the Court if such changes are consistent with the Court's Final Order and Final Judgment and do not limit the rights of Class Members under this Settlement Agreement.

B.     This Settlement Agreement shall terminate at the discretion of either Toyota or Denso or Class Representatives, through Class Counsel, if: (1) the Court, or any appellate court(s), rejects, modifies, or denies approval of any portion of the Settlement Agreement that the terminating party reasonably determine(s) is material, including, without limitation, the terms of relief, the findings, or conclusions of the Court, the provisions relating to notice, the definition of the Class, and/or the terms of the Release; or (2) the Court, or any appellate court(s), does not enter or completely affirm, or alters, narrows or expands, any portion of the Final Order and Final Judgment, or any of the Court's findings of fact or conclusions of law, that the terminating party reasonably determine(s) is material; or (3) the Parties are unable after good faith efforts to reach agreement regarding Additional Vehicles.  The terminating party must exercise the option to withdraw from and terminate this Settlement Agreement, as provided in this Section X.B., by a

45

signed writing served on the other Parties no later than 20 days after receiving notice of the event prompting the termination.  The Parties will be returned to their positions status quo ante.

C.      If an option to withdraw from and terminate this Settlement Agreement arises under Section X.B above, neither Toyota, Denso, nor Class Representatives, through Class Counsel, are required for any reason or under any circumstance to exercise that option and any exercise of that option shall be in good faith.

D.      If, but only if, this Settlement Agreement is terminated pursuant to Section X.B, above, then:

1.      This Settlement Agreement shall be null and void and shall have no force or effect, and no Party to this Settlement Agreement shall be bound by any of its terms, except for the terms of this Section X.D;

2.      The Parties will petition the Court to have any stay orders entered pursuant to this Settlement Agreement lifted;

3.      All of its provisions, and all negotiations, statements, and proceedings relating to it shall be without prejudice to the rights of Toyota, Denso, Class Representatives, or any Class Member, all of whom shall be restored to their respective positions existing immediately before the execution of this Settlement Agreement, except that the Parties shall cooperate in requesting that the Court set a new scheduling order such that no Party's substantive or procedural rights are prejudiced by the settlement negotiations and proceedings;

4.      Class Representatives, on behalf of themselves and their heirs, assigns, executors, administrators, predecessors, and successors, and on behalf of the Class, expressly and affirmatively reserve and do not waive all motions as to, and arguments in support of, all claims,

causes of action, or remedies that have been or might later be asserted in the Action including, without limitation, any argument concerning class certification, and treble or other damages;

5.      Toyota, Denso, and the other Released Parties expressly and affirmatively reserve and do not waive all motions and positions as to, and arguments in support of, all defenses to the causes of action or remedies that have been sought or might be later asserted in the actions, including without limitation, any argument or position opposing class certification, liability, or damages;

6.      Neither the fact of the Settlement Agreement having been made, the negotiations leading to it, nor any discovery or action taken by a Party or Class Member pursuant to this Settlement Agreement shall be admissible or entered into evidence for any purpose whatsoever, except to the extent the Settlement Agreement is filed with the Court, it can be referenced in the Action and any related appeal;

7.      Any settlement-related order(s) or judgment(s) entered in this Action after the date of execution of this Settlement Agreement shall be deemed vacated and shall be without any force or effect;

8.      All costs incurred in connection with the Settlement Agreement, including, but not limited to, notice, publication, claims administration and customer communications are the responsibility of Defendants and will be paid by Defendants.  Neither Class Representatives nor Class Counsel shall be responsible for any of these costs or other settlement-related costs; and

9.      Notwithstanding the terms of this paragraph, if the Settlement is not consummated, Class Counsel may include any time spent in settlement efforts as part of any fee petition filed at the conclusion of the case, and Toyota and Denso reserve the right to object to the reasonableness of such requested fees.

## XII.   **GENERAL MATTERS AND RESERVATIONS**

A.     Toyota and Denso have denied and continue to deny each and all of the claims and contentions alleged in the Action, and have denied and continue to deny that they have committed any violation of law or engaged in any wrongful act that was alleged, or that could have been alleged, in the Action.  Toyota and Denso believe that they have valid and complete defenses to the claims asserted against them in the Action and deny that they committed any violations of law, engaged in any unlawful act or conduct, or that there is any basis for liability for any of the claims that have been, are, or might have been alleged in the Action.  Nonetheless, Toyota and Denso have concluded that it is desirable that the Action be fully and finally settled in the matter and upon the terms and conditions set forth in this Settlement Agreement.

B.     The obligation of the Parties to conclude the Settlement Agreement is and shall be contingent upon each of the following:

1.     Entry by the Court of the Final Order and Final Judgment approving the Settlement Agreement, from which the time to appeal has expired or which has remained unmodified after any appeal(s); and

2.     Any other conditions stated in this Settlement Agreement.

C.     The Parties and their counsel agree to keep the existence and contents of this Settlement Agreement confidential until the date on which the Motion for Preliminary Approval is filed; provided, however, that this Section shall not prevent Toyota or Denso from disclosing such necessary information from this Settlement Agreement, prior to the date on which the Motion for Preliminary Approval is filed, to state and federal agencies, independent accountants, actuaries, advisors, financial analysts, insurers, or attorneys.  Nor shall it prevent the Parties and their counsel from disclosing such information to persons or entities (such as experts, courts, co-counsel, and/or

48

administrators) to whom the Parties agree disclosure must be made to effectuate the terms and conditions of this Settlement Agreement.

D.      Class Representatives and Class Counsel agree that the confidential information made available to them solely through the settlement process was made available, as agreed to, on the condition that neither Class Representatives nor their counsel may disclose it to third parties (other than experts or consultants retained by Class Representatives in connection with the Action); that it not be the subject of public comment; that it not be used by Class Representatives or Class Counsel in any way in this litigation or otherwise should the Settlement Agreement not be achieved, and that it is to be returned if a settlement is not concluded; provided, however, that nothing contained herein shall prohibit Class Representatives from seeking such information through formal discovery if not previously requested through formal discovery or from referring to the existence of such information in connection with the settlement of the Action.

E.      Information provided by Toyota, Denso, Toyota's Counsel, and/or Denso's Counsel to Class Representatives, Class Counsel, Plaintiffs' Counsel, any individual Class Member, counsel for any individual Class Member, and/or administrators, pursuant to the negotiation and implementation of this Settlement Agreement, includes trade secrets and highly confidential and proprietary business information and shall be deemed "Highly Confidential" pursuant to the protective orders that have been or will be entered in the Action, and shall be subject to all of the provisions thereof.  Any materials inadvertently produced shall, upon Toyota's or Denso's request, be promptly returned to Toyota's Counsel or Denso's Counsel, and there shall be no implied or express waiver of any privileges, rights, and defenses.

F.      Within 90 days after the Final Effective Date (unless the time is extended by agreement of the Parties), Class Counsel, Plaintiffs' Counsel, and any expert or other consultant

employed by them in such capacity or any other individual with access to documents provided by Toyota, Denso, Toyota's Counsel, and/or Denso's shall either: (i) return to Toyota's Counsel or Denso's Counsel, all such documents and materials (and all copies of such documents in whatever form made or maintained), physical evidence, and/or tangible items produced during the settlement process by Toyota and/or Toyota's Counsel or Denso and/or Denso's Counsel and any and all handwritten notes summarizing, describing or referring to such documents; or (ii) certify to Toyota's Counsel or Denso's Counsel that all such documents, physical evidence, tangible items, and/or materials (and all copies of such documents in whatever form made or maintained) produced by Toyota and/or Toyota's Counsel or Denso and/or Denso's Counsel and any and all handwritten notes summarizing, describing or referring to such documents have been destroyed, provided, however, that this Section XI.F shall not apply to any documents made part of the record in connection with a Claim for reimbursement as part of the Out-of-Pocket Claims Process, nor to any documents made part of a Court filing, nor to Class Counsel's and Plaintiffs' Counsel's work-product.  Nothing in this Settlement Agreement shall affect any confidentiality order or protective order in the Action.

G.      Toyota's execution of this Settlement Agreement shall not be construed to release – and Toyota expressly does not intend to release – any claim Toyota may have or make against any insurer for any cost or expense incurred in connection with this Settlement Agreement, including, without limitation, for Attorneys' Fees, Costs, and Expenses.

H.      Denso's execution of this Settlement Agreement shall not be construed to release – and Denso expressly does not intend to release – any claim Denso may have or make against any insurer for any cost or expense incurred in connection with this Settlement Agreement, including, without limitation, for Attorneys' Fees, Costs, and Expenses.

I.      Class Counsel represent that: (1) they are authorized by Class Representatives to enter into this Settlement Agreement with respect to the claims in this Action; and (2) they are seeking to protect the interests of the Class.

J.      Class Counsel further represent that Class Representatives: (1) have agreed to serve as representatives of the Class proposed to be certified herein; (2) are willing, able, and ready to perform all of the duties and obligations of representatives of the Class, including, but not limited to, being involved in discovery and fact-finding; (3) have read the pleadings in the Action or have had the contents of such pleadings described to them; (4) are familiar with the results of the fact-finding undertaken by Class Counsel; (5) have been kept apprised of settlement negotiations among the Parties, and have either read this Settlement Agreement, including the exhibits annexed hereto, or have received a detailed description of it from Class Counsel and/or Plaintiffs' Counsel and have agreed to its terms; (6) have consulted with Class Counsel about the Action and this Settlement Agreement and the obligations imposed on representatives of the Class; (7) have authorized Class Counsel to execute this Settlement Agreement on their behalf; and (8) shall remain and serve as representatives of the Class until the terms of this Settlement Agreement are effectuated, this Settlement Agreement is terminated in accordance with its terms, or the Court at any time determines that said Class Representatives cannot represent the Class.

K.      The Parties acknowledge and agree that no opinion concerning the tax consequences of the Settlement Agreement to Class Members is given or will be given by the Parties, nor are any representations or warranties in this regard made by virtue of this Settlement Agreement.  Each Class Member's tax obligations, and the determination thereof, are the sole responsibility of the Class Member, and it is understood that the tax consequences may vary depending on the particular circumstances of each individual Class Member.

L.     Toyota represents and warrants that the individual(s) executing this Settlement Agreement is authorized to enter into this Settlement Agreement on behalf of Toyota.

M.     Denso represents and warrants that the individual(s) executing this Settlement Agreement is authorized to enter into this Settlement Agreement on behalf of Denso.

N.     This Settlement Agreement, complete with its exhibits, sets forth the sole and entire agreement among the Parties with respect to its subject matter, and it may not be altered, amended, or modified except by written instrument executed by Class Counsel, Toyota's Counsel on behalf of Toyota, and Denso's Counsel on behalf of Denso.  The Parties expressly acknowledge that no other agreements, arrangements, or understandings not expressed in this Settlement Agreement exist among or between them, and that in deciding to enter into this Settlement Agreement, they rely solely upon their judgment and knowledge.  This Settlement Agreement supersedes any prior agreements, understandings, or undertakings (written or oral) by and between the Parties regarding the subject matter of this Settlement Agreement.

O.     This Settlement Agreement and any amendments thereto shall be governed by and interpreted according to the law of the State of New York notwithstanding its conflict-of-laws provisions.

P.     For the purposes of settlement only, Toyota and Denso consent to the personal jurisdiction of the United States District Court for the Eastern District of New York and any disagreement and/or action to enforce this Settlement Agreement shall be commenced and maintained only in the United States District Court for the Eastern District of New York.  However, Toyota and Denso reserve the right to contest personal jurisdiction if the Court does not approve the settlement.

Q.     Whenever this Settlement Agreement requires or contemplates that one of the Parties shall or may give notice to the other, notice shall be provided by e-mail and/or next-day (excluding Saturdays, Sundays, and Federal Holidays) express delivery service as follows:

     1.     If to Toyota, then to:

       John P. Hooper
       Eric Gladbach
       King & Spalding LLP
       1185 Avenue of the Americas
       34th Floor
       New York, NY 10036
       Tel.: (212) 556-2220
       Tel.: (212) 556-2226
       E-mail: Jhooper@kslaw.com
       E-mail: Egladbach@kslaw.com

     2.     If to Denso, then to:

       Daniel R.W. Rustmann
       BUTZEL LONG, P.C.
       150 W. Jefferson, Suite 100
       Detroit, MI 48226
       Phone: 313-225-7067
       Email: rustmann@butzel.com

     3.     If to the Class, then to:

       W. Daniel "Dee" Miles III
       Demet Basar
       Beasley, Allen, Crow, Methvin, Portis & Miles, P.C.
       218 Commerce Street
       Montgomery, Alabama 36104
       Tel.: (800) 898-2034
       E-mail: Dee.Miles@BeasleyAllen.com
       Email: Demet.Basar@BeasleyAllen.com

R.     All time periods set forth herein shall be computed in calendar days unless otherwise expressly provided.  In computing any period of time prescribed or allowed by this Settlement Agreement or by order of the Court, the day of the act, event, or default from which the designated period of time begins to run shall not be included.  The last day of the period so

computed shall be included, unless it is a Saturday, a Sunday or a Federal Holiday, or, when the act to be done is the filing of a paper in court, a day on which weather or other conditions have made the office of the clerk of the court inaccessible, in which event the period shall run until the end of the next day that is not one of the aforementioned days.  As used in this Section "Federal Holiday" includes New Year's Day, Birthday of Martin Luther King, Jr., Presidents' Day, Memorial Day, Juneteenth, Independence Day, Labor Day, Columbus Day, Veterans Day, Patriot's Day, Thanksgiving Day, Christmas Day, and any other day appointed as a holiday by the President, the Congress of the United States, or the Clerk of the United States District Court for the Eastern District of New York.

S.      The Parties reserve the right, subject to the Court's approval, to agree to any reasonable extensions of time that might be necessary to carry out any of the provisions of this Settlement Agreement.

T.      The Class, Class Representatives, Class Counsel, Toyota, Toyota's Counsel, Denso, and/or Denso's Counsel shall not be deemed to be the drafter of this Settlement Agreement or of any particular provision, nor shall they argue that any particular provision should be construed against its drafter.  All Parties agree that this Settlement Agreement was drafted by counsel for the Parties during extensive arm's length negotiations.

U.      The Parties expressly acknowledge and agree that this Settlement Agreement and its exhibits, along with all related drafts, motions, pleadings, conversations, negotiations, and correspondence, constitute an offer of compromise and a compromise within the meaning of Federal Rule of Evidence 408 and any equivalent rule of evidence in any state.  In no event shall this Settlement Agreement, any of its provisions, or any negotiations, statements, or court proceedings relating to its provisions in any way be construed as, offered as, received as, used as,

or deemed to be evidence of any kind in the Action, any other action, or in any judicial, administrative, regulatory, or other proceeding, except in a proceeding to enforce this Settlement Agreement or the rights of the Parties or their counsel.  Without limiting the foregoing, neither this Settlement Agreement nor any related negotiations, statements, or court proceedings shall be construed as, offered as, received as, used as, or deemed to be evidence or an admission or concession of any liability or wrongdoing whatsoever on the part of any person or entity, including, but not limited to, the Released Parties, Class Representatives, or the Class or as a waiver by the Released Parties, Class Representatives, or the Class of any applicable privileges, claims, or defenses.

V.      Class Representatives, through their counsel, expressly affirm that the allegations contained in the Class Action Complaint and all prior complaints filed in the Action were made in good faith, but consider it desirable for the Action to be settled and dismissed because of the substantial benefits that the Settlement Agreement will provide to Class Members.

W.      The Parties, their successors and assigns, and their counsel undertake to implement the terms of this Settlement Agreement in good faith, and to act in good faith in resolving any disputes that may arise in the implementation of the terms of this Settlement Agreement.

X.      The waiver by one Party of any breach of this Settlement Agreement by another Party shall not be deemed a waiver of any prior or subsequent breach of this Settlement Agreement.

Y.      If one Party to this Settlement Agreement considers another Party to be in breach of its obligations under this Settlement Agreement, that Party must provide the breaching Party with written notice of the alleged breach and provide a reasonable opportunity to cure the breach before taking any action to enforce any rights under this Settlement Agreement.

Z.     The Parties, their successors and assigns, and their counsel agree to publicly support this Settlement Agreement, to cooperate fully with one another in seeking Court approval of this Settlement Agreement and to use their best efforts to effect the prompt consummation of the Settlement Agreement.

AA.     This Settlement Agreement may be signed with a facsimile signature and in counterparts, each of which shall constitute a duplicate original.

BB.     In the event any one or more of the provisions contained in this Settlement Agreement shall for any reason be held to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect any other provision if Toyota's Counsel, on behalf of Toyota, Denso's Counsel, on behalf of Denso, and Class Counsel, on behalf of Class Representatives and Class Members, mutually agree in writing to proceed as if such invalid, illegal, or unenforceable provision had never been included in this Settlement Agreement. Any such agreement shall be reviewed and approved by the Court before it becomes effective.

CC.     This Settlement Agreement shall be binding upon and inure to the benefit of, the successors and assigns of the Class and Defendants.

Agreed to on the date indicated below.

APPROVED AND AGREED TO BY CLASS COUNSEL
AS AUTHORIZED BY CLASS REPRESENTATIVES


BY: _____          DATE: _____Sept. 7th_____, 2022
    W. Daniel "Dee" Miles III



BY: _____          DATE: _____, 2022
    Demet Basar

56

Z.      The Parties, their successors and assigns, and their counsel agree to publicly support this Settlement Agreement, to cooperate fully with one another in seeking Court approval of this Settlement Agreement and to use their best efforts to effect the prompt consummation of the Settlement Agreement.

AA.     This Settlement Agreement may be signed with a facsimile signature and in counterparts, each of which shall constitute a duplicate original.

BB.     In the event any one or more of the provisions contained in this Settlement Agreement shall for any reason be held to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect any other provision if Toyota's Counsel, on behalf of Toyota, Denso's Counsel, on behalf of Denso, and Class Counsel, on behalf of Class Representatives and Class Members, mutually agree in writing to proceed as if such invalid, illegal, or unenforceable provision had never been included in this Settlement Agreement.  Any such agreement shall be reviewed and approved by the Court before it becomes effective.

CC.     This Settlement Agreement shall be binding upon and inure to the benefit of, the successors and assigns of the Class and Defendants.

Agreed to on the date indicated below.

APPROVED AND AGREED TO BY CLASS COUNSEL
AS AUTHORIZED BY CLASS REPRESENTATIVES


BY:_____      DATE: _____, 2022
    W. Daniel "Dee" Miles III


BY:_____      DATE: _September 7_____, 2022
    Demet Basar

APPROVED AND AGREED TO BY TOYOTA MOTOR CORPORATION AND TOYOTA
MOTOR NORTH AMERICA, INC.

BY _____          DATE: ___September 7,_____, 2022
ELIZABETH GIBSON
V.P. DEPUTY GENERAL COUNSEL
TMNA-TL1 NA CHIEF LEGAL OFFICER

APPROVED AND AGREED TO AS TO FORM
BY TOYOTA'S COUNSEL

BY_____          DATE: ___September 7,_____, 2022
JOHN P. HOOPER
KING & SPALDING LLP

APPROVED AND AGREED TO BY DENSO INTERNATIONAL AMERICA, INC.

BY _Jon M. Canty_        DATE: _September 7_ , 2022
NAME   Jon M. Canty
TITLE(S)   Director & General Counsel


APPROVED AND AGREED TO AS TO FORM
BY DENSO'S COUNSEL

BY _____   DATE: _SEPTEMBER 7_ , 2022
DANIEL R.W. RUSTMANN
BUTZEL LONG, P.C.

58